UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA LEE THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:17-cv-00216 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born August 1, 1968, applied on August 6, 2013 for SSI, alleging disability beginning November 27, 2010. Administrative Transcript ("AT") 162-172. Plaintiff alleged she was unable to work due to a brain injury from mercury poisoning, post traumatic stress disorder, fibromyalgia, petite mal seizures, anxiety, depression, degenerative disc disease, and arthritis all over her body. AT 186. In a decision dated February 1, 2016, the ALJ determined that plaintiff

1

was not disabled.[1]  AT 13-28. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since November 27, 2010, the alleged onset date.
>
> 3. The claimant has the following severe impairments: fibromyalgia; post-traumatic stress disorder, anxiety; seizures; depression; degenerative disc disease; cognitive disorder; history of mercury poisoning; asthma; Stevens Johnson syndrome; dermatitis; migraines; and possible autoimmune disease.
>
> 4. The claimant does not have an impairment or combination of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; the claimant can sit, stand and/or walk for 6 hours in an 8-hour workday with normal breaks; the claimant can occasionally perform postural activity; the claimant cannot climb ladders, ropes, or scaffolds; the claimant cannot work around hazards, such as unprotected heights and dangerous moving machinery; the claimant can perform non-public simple repetitive tasks; and the claimant can have occasional interaction with co-workers and supervisors.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on August 1, 1968 and was 42 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from November 27, 2010 through the date of this decision.

AT 18-28.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to properly weigh the treating physician's opinion; (2) the ALJ failed to properly evaluate the listings; and (3) the ALJ improperly evaluated plaintiff's testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A. Medical Evidence

Plaintiff asserts that the ALJ improperly discounted the opinions of treating psychiatrist Dr. Richard Heidenfelder.

Dr. Heidenfelder initially examined plaintiff in August 2013 and diagnosed her with PTSD related to mercury poisoning by her ex-husband in 2010, a history of seizures, and fibromyalgia. AT 23. He saw her multiple times afterward, noting "monthly" visits. AT 306, 556; see AT 1430-1460 (progress notes from August 2013 to June 2015). In 2015, Dr. Heidenfelder filled out two questionnaires about plaintiff's mental impairments. AT 306-310

////

////

(January 30, 2015 form); AT 556-560 (June 1, 2015 form).[2]

In the January 2015 form, Dr. Heidenfelder listed his clinical findings of "persistent anxiety, PTSD symptoms, unable to function socially, very isolated; mental status: poor short term [and] long term recall, difficulty with problem solving." AT 306. "Prognosis: poor." AT 306. He found plaintiff "unable to meet competitive standards" in several mental aptitudes needed to do unskilled work, including the ability to maintain regular attendance, maintain attention for two-hour segments, and "complete a normal workday and workweek without interruptions from psychologically based symptoms." AT 307. Asked to explain these limitations, he wrote: "chronic history of occupational and relationship difficulties. Unable to maintain employment or long term relationship. Persistence of symptoms." AT 307. Dr. Heidenfelder found plaintiff able, to some degree, to interact with the public, maintain socially appropriate behavior, maintain a neat appearance, travel, and use public transportation. AT 308. He noted "four or more episodes of decompensation within 12 months, each at least two weeks long." AT 309. He opined that plaintiff's impairments would cause her to be absent from work more than four days per month. AT 310.

In the June 2015 form, Dr. Heidenfelder repeated his diagnoses, noting that plaintiff's fibromyalgia was "significantly exacerbated by her depression and anxiety." AT 557. As to medication side effects, he wrote: "Patient has been unable to tolerate any medication thus far without significant and severe side effects/allergic reactions – hives, anaphylaxis." AT 557. Dr. Heidenfelder indicated that plaintiff's "impairment or treatment would cause absence from work" more than three times per month, citing "severe and persistent depression and anxiety with intermittent severe panic attacks. Anhedonia, intermittent suicidal ideation." AT 558. He found that she had mental health impairments "not amendable to treatment" due to "chronic systemic allergies and chronic medical/physical disorders." AT 558. Dr. Heidenfelder found that plaintiff had "marked" difficulties in the following work-related activities: the ability to perform detailed and complex instructions; maintain concentration, attention, persistence and pace; maintain

---

[2] References to a January 2016 form cite to an apparent duplicate of the January 2015 form. (AT 963-968.)

5

regular attendance and perform work activities on a consistent basis; and perform work activities without special or additional supervision. AT 559. As in January 2015, he noted four or more episodes of "decompensation, each of extended duration," within a one-year period. AT 559.

The ALJ considered these reports in his decision, but concluded that

> the overall objective record does not fully support the opinion of Dr. Heidenfelder. For instance, the claimant was able to attend college classes towards her Bachelor's degree in psychology; she maintained a relationship with a boyfriend for two years; and her symptoms improved with Klonopin wherein she had less panic and anxiety. Also, on June 11, 2015, the claimant was well groomed and had good hygiene; she had normal eye contact and appropriate responses to questions; she had normal speech; she had logical and linear thought process without delusions or obsessive thought content; she had appropriate insight and judgment, and no evidence of impaired judgment; she was fully oriented in all spheres, and had intact memory, concentration, and attention; and she had a euthymic mood with stable affect. [Cite to AT 1431-1432.] As such, more weight is afforded to the objective treatment records.

AT 26. The June 11, 2015 records cited by the ALJ are progress notes by Dr. Heidenfelder, issued less than two weeks after the June 2015 form described above. AT 1431-1432.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Defendant contends that the ALJ provided "specific and legitimate reasons supported by substantial evidence" to discount Dr. Heidenfelder's opinions, as there was a contradictory medical opinion in the record.[3] Psychologist Dr. Ted Shore conducted an evaluation of plaintiff in August 2013, including objective testing, and filled out a medical source statement on plaintiff's ability to do work-related activities. (AT 1634-1642.) Dr. Shore found plaintiff to have mild limitations in the ability to perform detailed/complex tasks; maintain adequate work pace, attention, and concentration; maintain regular attendance and perform activities within a schedule; and manage stress and respond to changes in work setting. AT 1639. He found her mildly to moderately limited "due to social anxiety" in the ability to interact appropriately with co-workers and the public. AT 1639. On the medical source form, he marked only mild limitations, noting that plaintiff "showed signs of possible mild cognitive deficits." AT 1640. The ALJ gave "great weight" to Dr. Shore's findings, which he found "consistent with the medical evidence[.]" AT 25.

Plaintiff asserts that, in discounting Dr. Heidenfelder's opinions, the ALJ did not discuss the factors required by 20 C.F.R. § 404.1527(c). The regulations provide that "[w]hen we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). These factors include the length

---

[3] The parties agree that the ALJ was required to provide "specific and legitimate reasons" rather than the "clear and convincing" standard.

of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the extent to which the opinion is supported by evidence, the consistency of the opinion with the record as a whole, and whether the medical source is a specialist.

Here, in discounting Dr. Heidenfelder's opinions, the ALJ cited "the overall objective record" and Dr. Heidenfelder's own notes, but did not explain why the opinion of plaintiff's long-term treating physician was less reliable than the opinion of a one-time examining physician. See § 505.1527(c)(2)(i)-(ii). Evidence that plaintiff was well-groomed, logical, and stable on June 11, 2015 does not address Dr. Heidenfelder's findings that she had "four or more episodes of decompensation within 12 months, each at least two weeks long." AT 309; see AT 559. See Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating [mental health] symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Nor is this opinion contradicted by Dr. Shore's August 2015 report. In sum, the undersigned finds that the ALJ did not provide "specific and legitimate reasons" for discounting the opinion of the physician who saw plaintiff monthly over a two-year period. Thus plaintiff is entitled to summary judgment on this claim.[4]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

---

[4] As the weighing of Dr. Heidenfelder's opinion bears on plaintiff's other claims, the court does not reach these additional arguments.

8

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether plaintiff met a Listing requirement or was otherwise disabled within the meaning of the Social Security Act.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 22) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 23) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: February 7, 2018

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/thompson0216.ssi.ckd

9